UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

REBECCA DUELL,

                    Plaintiff,

          v.                              **REPORT AND RECOMMENDATION**
                                          **08-CV-0969 (DNH)**

MICHAEL J. ASTRUE,[1]
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant,

## I.    Introduction

    Plaintiff Rebecca Duell brings this action pursuant to the Social Security Act ("the

Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the

Commissioner of Social Security  ("Commissioner"), denying her application for

disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").[2]

Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ")

denying her applications for benefits was not supported by substantial evidence and

was contrary to the applicable legal standards. The Commissioner argues that the

decision was supported by substantial evidence and made in accordance with the

correct legal standards.

    For the reasons set forth below, the Court finds the Commissioner's decision is

not supported by substantial evidence and not determined in accordance with the

applicable law. Therefore, the Court recommends that the Plaintiff's motion for judgment

on the pleadings be granted in part and Defendant's cross-motion for judgment on the

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to
Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit.
[2] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman
A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated September 1, 2009.

pleadings be denied.[3]

## II.   Background

On December 5, 2005, Plaintiff, then 35 years old, filed an application for SSI and DIB, claiming disability since October 12, 2002, because of depression (R. at 46-50).[4] Her application was denied initially on April 6, 2006 (R. at 20-24). Plaintiff filed a timely request for a hearing on June 1, 2006 (R. at 25).

On November 5, 2007, Plaintiff and her attorney appeared before the ALJ (R. at 186-202).The ALJ considered the case *de novo* and, on November 18, 2007, issued a decision finding Plaintiff was not disabled (R. at 10-14). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on August 26, 2008 (R. at 2-4). On September 12, 2008, Plaintiff filed this action disputing her disability determination.

Based on the entire record, the Court recommends remand because the ALJ did not apply the appropriate legal standards to his assessment of Plaintiff's credibility, the opinion evidence, or Plaintiff's mental impairments.

## III.   Discussion

### A.  Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).
[4] Citations to the underlying administrative record are designated as "R."

Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); <u>see</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983); <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir. 1979).   "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. <u>See</u> <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir. 1982).

    "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." <u>Williams ex rel. Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a *de novo* review."
Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[5] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

---

[5] First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.
Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

### B.  Analysis

### 1.        The Commissioner's Decision

The ALJ followed the sequential analysis and concluded that Plaintiff was not disabled within the meaning of the Act (R. at 14). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity (R. at 11). The ALJ found that Plaintiff had the following severe impairments: asthma, bipolar disorder, learning disability, and anxiety, but that none of her impairments, alone or in combination met a Listed impairment (R. at 12). The ALJ considered Plaintiff's "testimony and demeanor" and found her "not entirely credible" (R. at 12). At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform light work activity which is not highly stressful or complex" (R. at 12). He concluded that she had no past relevant work to which she could return (R. at 13). Finally, at step five, the ALJ found that Plaintiff was a younger individual, with limited education (R. at 13). Therefore, using Medical-Vocational Rule 202.17,[6] the ALJ concluded that Plaintiff was not disabled (R. at 13).

### 2.        Plaintiff's Claims

Plaintiff argues that the ALJ (a) improperly assessed Plaintiff's credibility; (b) improperly assessed the opinion evidence of the consultative examiners and Plaintiff's nurse practitioner; (c) failed to properly consider Plaintiff's mental impairments, including her borderline intelligence, depression, bipolar disorder, and anxiety; (d) did not meet the Commissioner's burden of proof at step five, Plaintiff's Brief, pp. 9-24; and finally, (e)

---

[6] Medical-Vocational Rule 202.17 indicates a finding of not disabled for a claimant who is a younger individual, with limited education or less, and no past work or unskilled past work. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.17.

5

Plaintiff argues that her case should be remanded for a calculation of benefits. Plaintiff's

Brief, p. 24

### a. The ALJ Failed to Apply the Proper Legal Standard in Assessing Plaintiff's Credibility

Plaintiff argues that the ALJ did not properly assess her credibility. Plaintiff's

Brief, pp. 10-14, 21-24. Defendant argues that substantial evidence of record supports

that ALJ's conclusion that Plaintiff was not entirely credible, including Dr. Wassef's and

Dr. Hartman's findings. Defendant's Brief, pp. 7-8.

After carefully reviewing the decision and record, the Court concludes that the

ALJ failed to apply the proper legal standard in assessing Plaintiff's credibility and that

his credibility finding is not supported by substantial evidence. In this case, the ALJ

analyzed Plaintiff's credibility as follows:

> The undersigned considered claimant's testimony and demeanor at the hearing and his [sic] subjective complaints of pain and found it to be not entirely credible. The evidence documents that the claimant has a history of learning disability and emotional problems, back and neck pain and asthma which are reported in the medical evidence however, the evidence does not document that the complaints are disabling.

(R. at 12). However, the ALJ failed to apply the required two-step analysis. In analyzing

credibility, an ALJ must engage in a two-step analysis by first determining whether the

claimant has medically determinable impairments, "which could reasonably be expected

to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p,

1996 WL 374186, at *2. Second, if medically determinable impairments are shown, then

the ALJ must evaluate the intensity and persistence of the symptoms to determine the

extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL

374186, at *2; 20 C.F.R. § 404.1529(c); <u>Borush v. Astrue</u>, No. 3:05-CV-361, 2008 WL

6

4186510, at *12 (N.D.N.Y. Sept. 10, 2008). The ALJ will determine that a claimant's symptoms limit his or her capacity to work to the extent such limitations "can reasonably be accepted as consistent" with the medical and other evidence of record. 20 C.F.R. § 404.1529(a); see S.S.R. 96-7p, 1996 WL 374186, at *2. However, an ALJ may not reject a claimant's statements about the limiting effect of symptoms "solely because the available objective medical evidence does not substantiate [those] statements." 20 C.F.R. § 404.1529(c)(2). Instead, because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," the ALJ must carefully consider any other relevant information, including the claimant's statements, and the factors listed in the regulations.[7] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii). The ALJ's failure to apply the necessary legal standard is error and necessitates remand. Johnson, 817 F.2d at 986 ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see, e.g., Crysler v. Astrue, 563 F.Supp.2d 418, 442 (N.D.N.Y. 2008) (finding the ALJ's credibility analysis flawed in part because "the ALJ failed to state in his decision whether plaintiff's medical impairments could reasonably be expected to produce the pain or other symptoms alleged").

---

[7] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms; (vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

**b.  The ALJ Failed to Properly Assess the Opinion Evidence**

Plaintiff argues that the ALJ improperly accorded more weight to the opinion of consultative examiner, Dr. Nader Wassef, than he gave to the opinion of Plaintiff's treating nurse practitioner, Lisa LaPierre-Miller. Plaintiff's Brief, pp. 17-21. Plaintiff further argues that the ALJ gave greater weight to the opinions of examining psychological consultant, Dr. Brett Hartman, and less weight to the opinions of examining psychological consultant, Dr. Richard F. Liotta and "did not explain why he did not credit Dr. Liotta's assessment that [Plaintiff] suffered from serious impairments in social and occupation [sic] functioning, with a GAF[8] of only 44." Plaintiff's Brief, p. 21.

As an initial matter, the Court notes that the ALJ failed to assign weight to any State agency physician's or psychologists' opinions (R. at 12). However, the regulations clearly require an ALJ to "evaluate every medical opinion." 20 C.F.R. § 416.927(d); see 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s)."). The regulations further require an ALJ to "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant," unless the ALJ has given controlling weight to the opinions of a treating source. 20 C.F.R. § 416.927(f)(2)(ii). In this case, Plaintiff had no "treating source," because she was only regularly treated by nurse practitioners (R. at 62-78); see 20 C.F.R. § 416.902 (defining a treating source as a claimant's own

---

[8] GAF refers to a psychological assessment scale, formally known as a Global Assessment of Functioning ("GAF"). The GAF scale ranks psychological, social, and occupational functioning on a continuum of mental health, from 1 to 100, where the higher numbers indicate  superior functioning. A GAF score of 41 to 50 indicates "serious symptoms OR any serious impairment in social, occupation, or school functioning." Diagnostic and Statistical Manual of Mental Disorders, Text Revision 34 (Am. Psychiatric Ass'n, 4th ed. 2000).

"physician, psychologist, or other acceptable medical source who provides . . . medical treatment or evaluation and who has . . . ongoing treatment relationship with [the claimant].")); 20 C.F.R. § 416.913(a) (listing licensed physicians and psychologists as acceptable medical sources); § 416.913(d) (listing nurse practitioners as "other" medical sources). Because the ALJ could not have given "a treating source's opinion controlling weight," he was obliged to "consider all of the [listed] factors in deciding the weight [to] give to any medical opinion," 20 C.F.R. § 416.927(d), and explain the weight given. 20 C.F.R. § 416.927(f)(2)(ii).

Here, the ALJ failed to explain the weight he assigned to the various consultative opinions and it is not clear that he considered the relevant factors in assessing the relative merit of the opinions. For example, the ALJ mentioned the opinions of both consultative psychologists, Dr. Hartman and Dr. Liotta, but did not differentiate between the opinions (R. at 12). However, if the ALJ had evaluated the opinions using the regulatory factors, he would have had to consider the supportability of the opinions and any other factor tending to support or detract from an opinion. 20 C.F.R. § 416.927(d)(3),(6). In considering these factors, the ALJ should have noticed that Dr. Liotta's assessment relied not only upon a mental status examination and neuropsychological testing (R. at 166-67), but also upon a thorough review of Plaintiff's school records, which included an IQ test, psycho-educational evaluation notes, social work assessment, school psychologist assessment, reading and comprehension tests, and psychological intake forms from treatment (R. at 163-64). The records that Dr. Liotta summarized in his assessment are not part of the administrative record and were not available for Dr. Hartman's review (R. at 84-95). Dr. Hartman's opinions were based

9

upon a mental status exam and an IQ test (R. at 86-87, 93). The availability of this additional evidence affected the opinions of Drs. Liotta and Hartman. Plaintiff told each doctor she had been diagnosed with bipolar disorder, but only Dr. Liotta listed the diagnosis (R. at 88, 168). Similarly, Dr. Hartman opined that his testing showed a learning disorder but he could not be more specific, whereas Dr. Liotta diagnosed Plaintiff with cognitive disorder with memory deficits, a reading disorder, and a disorder of written expression (R. at 93-94, 168). Moreover, the additional evidence supporting Dr. Liotta's opinion generally entitled his opinion to greater weight. 20 C.F.R. § 416.927(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). The ALJ's failure to consider the relevant factors and explain the weight afforded to the medical opinions from consultative physicians and psychologists constitutes legal error and necessitates remand. See, e.g., Richardson v. Barnhart, 443 F.Supp.2d 411, 424-25 (W.D.N.Y. 2006) (finding the ALJ erred where he failed to explain the weight he gave to the opinions of consultative examining physicians, even though the treating physician's opinions were not given controlling weight).

Additionally, while Nurse LaPierre-Miller's opinions are clearly not entitled to the controlling weight afforded to treating physician's opinions, the Second Circuit has long recognized that the opinions of a nurse practitioner who regularly treats a claimant is entitled to "some extra consideration." Mongeur v. Heckler, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983). In this case, the record indicates that Plaintiff was *only* treated by nurse

practitioners. At Northwestern Family Medical Center, Plaintiff was treated by Nurse LaPierre-Miller and, at Family Medicine Center, Plaintiff was treated by nurse practitioner, Maureen Richardson (R. at 62-73). The record also contains a disability form completed by nurse practitioner, Judy A. Murphy, from the Women's Health Center (R. at 74-78). Aside from these nurse practitioners, Plaintiff was occasionally seen at the emergency room of Champlain Valley Physician's Hospital for various complaints (R. at 102-129). At the hearing, Plaintiff's attorney explained that Nurse LaPierre-Miller was the only available primary care provider in the rural North Country area where Plaintiff lives (R. at 192-93). The Second Circuit has said that a nurse practitioner's opinion is entitled to some consideration, "particularly because [the nurse practitioner] was the only medical professional available to [Plaintiff] for long stretches of time in the very rural 'North Country' of New York State." Kohler v. Astrue, 546 F.3d 260, 268-69 (2d Cir. 2008).

In this case, the ALJ stated "less weight is given to [Nurse Miller's] opinion as she is not a physician" (R. at 12). From this analysis, it is not clear to the Court that the ALJ gave Nurse LaPierre-Miller's opinion the "extra consideration" which it was due, especially considering that Nurse LaPierre-Miller was Plaintiff's regular treating source and the only medical professional available to her. See Mongeur, 772 at 1039, n.2; Kohler, 546 at 268-69. Although the ALJ's statement implies that Nurse LaPierre-Miller's opinions were accorded at least some consideration, it is clear from the ALJ's RFC determination—finding Plaintiff could perform light work which is not highly stressful or complex (R. at 12-13)—that he rejected Nurse LaPierre-Miller's opinion in its entirety. In contrast to the ALJ's RFC finding, Nurse LaPierre-Miller opined that Plaintiff was limited

11

to lifting and carrying less than ten pounds, standing and walking less than two hours, alternating between sitting and standing, and avoiding repetitive motions (R. at 182-85)—a level of exertion that most closely matches sedentary work. See 20 C.F.R. § 416.967(a) (defining sedentary work as generally lifting no more than ten pounds and only occasionally walking and standing). On remand, the ALJ must afford Nurse LaPierre-Miller's opinion the "extra consideration" to which it is entitled by Second Circuit case law. Mongeur, 772 at 1039, n.2; Kohler, 546 at 268-69.

### c. The ALJ Failed to Assess Plaintiff's Mental Impairments Under the Proper Legal Standard

Plaintiff argues that the ALJ "failed to give" the "correct" or "sufficient" weight to Plaintiff's severe mental impairments, namely her borderline intelligence, depression, bipolar disorder, social phobia, and anxiety. Plaintiff's Brief, pp. 14-16.

Upon review of the ALJ's decision and the record, the Court concludes that the ALJ did not apply the proper legal standard in assessing Plaintiff's mental impairments. When evaluating the severity of mental impairments, the regulations require application of a "special technique" at the second and third steps, in addition to the sequential analysis. Kohler, 546 F.3d at 265-66 (citing 20 C.F.R. § 404.1520a). The technique first requires a determination of whether the Plaintiff has medically determinable mental impairments. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4)

episodes of decompensation.[9] § 404.1520a(c)(3). A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." § 404.1520a(e)(2). Until Kohler, the Second Circuit had not determined the consequence of failing to adhere to the requirements of the special technique. Kohler, 546 F.3d 260. In Kohler, the Second Circuit found the failure to apply the special technique was legal error. Id. at 269. In that case, the ALJ did "not appear to have evaluated each of the four functional areas, and did not record specific findings as to [the Plaintiff's] degree of limitation in any of the areas." Id. at 267. Because the ALJ failed to "conduct a distinct analysis" of the issue, "it [was] not clear [to the Court] whether the ALJ adequately considered the entire record when determining the severity of [the Plaintiff's] impairment[.]" Id. at 267-68.

In this case, it is similarly unclear whether the ALJ adequately considered the entire record when assessing the severity of Plaintiff's mental impairments. The ALJ found "the medical evidence establishes the presence of asthma, bipolar disorder, learning disability and anxiety, impairments which . . . constitute a 'severe' impairment" (R. at 12). The record shows that Plaintiff was diagnosed with a variety of mental impairments that the ALJ did not ever mention, including depression, social phobia,

---

[9] "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." Kohler, 546 F.3d at 266 n.5 (quoting United States Social Security Administration, Disability Evaluation Under Social Security § 12.00 (June 2006)).

cognitive disorder, reading disorder, disorder of written expression, and personality disorder (R. 94, 168).

In addition to failing to assess all of Plaintiff's mental impairments, the ALJ failed to rate Plaintiff's degree of functional limitations in the four areas, as required by the special technique. See 20 C.F.R. § 404.1512(a) ("We will consider only impairment(s) you say you have or about which we receive evidence."); 20 C.F.R. § 404.1520a(e)(2) ("The decision must include a specific finding as to the degree of limitation in each of the functional areas."). The *Kohler* Court suggested, but did not find, that if an ALJ actually complied with the special technique by making determinations regarding Plaintiff's degree of limitation, then merely failing to strictly document the special technique would be harmless error. See Kohler, 546 F.3d at 269 n.9. However, where the Court could not identify findings regarding Plaintiff's limitations in the functional areas, nor discern whether the ALJ considered all the evidence relevant to those areas, the Court could not say the decision reflected an application of the correct legal standard, and ordered remand for the ALJ to properly apply the special technique. Id. at 269. In this case, there is no indication in the ALJ's decision that he made findings regarding a Plaintiff's degree of limitation in the four areas (R. at 10-14). Indeed, the ALJ concluded that Plaintiff's numerous mental impairments limited her in only two ways: she could not "perform complex tasks or highly stressful work" (R. at 13). This finding is wholly inadequate and fails to consider Plaintiff's limitations in all the relevant areas of functioning. For example, the evidence indicates that Plaintiff's ability to do activities of daily living is limited and often mood dependant: when she is depressed Plaintiff does very little (R. at 167); she cries frequently—sometimes daily—and often

14

does not get out of bed (R. at 59, 162, 164, 201); she can drive, but often does not, having her mother drive her to every medical examination and the hearing (R. at 84, 168, 194); she requires assistance to do dishes, laundry, and to vacuum (R. at 80-81, 85, 87, 162, 200); she does not shop and sometimes needs help or prompting to dress and bathe (R. at 80-81, 87, 165, 199); she is sometimes is unable to do any housework (R. at 59); she has been homeless multiple times (R. at 70, 164, 189); and on a daily basis, her parents help her with housework and childcare (R. at 164-65, 191, 199). In the area of social functioning, the record indicates that Dr. Liotta opined that Plaintiff was "significantly impaired" (R. at 168); Dr. Hartman opined she had mild difficulty relating adequately to others and mild to moderate difficulty dealing with "the normal stressors of life" (R. at 88); she is scared to be around people and afraid they will hurt her (R. at 165, 199); she told Nurse Richardson that she was afraid her sister's boyfriend was dangerous and that he cut her brakes twice and defaced her infant daughter's gravestone (R. at 70-71); she has few friends and does not want to make new friends or meet her neighbors (R. at 87, 163); she has cats, birds and fish so that she will not be alone when her kids are in school (R. at 164); she does not like to visit anyone or go shopping (R. at 165); and Dr. Liotta opined that Plaintiff's social functioning "problems occur across a variety of situations, including when she has attempted to work" (R. at 168). In the area of concentration, Dr. Liotta opined that Plaintiff's ability was "moderately impaired and at times markedly impaired, depending upon her mood state" (R. at 168). Dr. Liotta noted that Plaintiff has trouble completing consistent daily routines, has significant memory problems, and "she will need considerable repetition in order to learn new information" (R. at 167-68). The record

15

indicates that Plaintiff will run out of gas because she forgets to go to the gas station (R. at 73, 166); she has difficulty performing the mental status test of serial threes and sevens (R. at 87, 166). Finally, Plaintiff told Dr. Hartman that she could not remember being psychiatrically hospitalized (R. at 84), and told Dr. Liotta she had not been psychiatrically hospitalized (R. at 164), but other information reviewed by Dr. Liotta indicated Plaintiff started cutting herself as a teen, "had several suicide attempts and several psychiatric hospitalizations"(R. at 162). This evidence is bolstered by Plaintiff's admission under questioning that she had previously attempted suicide (R. at 197). Thus, there is some evidence that Plaintiff experienced episodes of decompensation. In light of the evidence of record indicating Plaintiff suffered from limitations in each of the functional areas, the ALJ's failure to apply the special technique is error. 20 C.F.R. § 404.1520a(e)(2); Kohler, 546 F.3d at 265-66.

### d.  The ALJ Did Not Fail to Meet the Step Five Burden of Proof

Plaintiff argues that the Commissioner did not meet his burden of proving that Plaintiff could perform other work in the economy. Plaintiff's Brief, pp. 9-10. Plaintiff argues that the "Commissioner did not meet his burden of proof that Ms. Duell could perform light work on a sustained and regular basis . . ." Plaintiff's Brief, p. 12-13.

Plaintiff misunderstands the nature of the Commissioner's burden at step five. At step five the Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [a claimant] can do, given [her] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c)(2). However, the Commissioner is "not responsible for providing additional

16

evidence about [a claimant's] residual functional capacity because [he] will use the same residual functional capacity assessment that [was] used to determine if [the claimant] can do [her] past relevant work." Id. Although Second Circuit case law at one time required the Commissioner to carry the burden of proof as to a claimant's ability to work, such case law has been abrogated by regulation. Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (explaining that the *Curry v. Apfel* standard was abrogated by regulation and that the burden shift at step five is limited and does not include evidence of RFC).

### e.  The Case is Not Remanded for Calculation of Benefits

Finally, Plaintiff argues that her case should be remanded for a calculation of benefits. Plaintiff's Brief, p. 24.

Under the Act, a court "shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (fourth sentence). "Where there are gaps in the administrative record or the ALJ has applied an improper legal standard," the Second Circuit has indicated that remand "for further development of the evidence" is proper. Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999) (internal citations omitted). "In other situations, where [the] Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision, [the Court has] opted simply to remand for a calculation of benefits." Id. at 83. Thus, the Second Circuit has reversed and "ordered that benefits be paid when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).

In this case, the Court does not recommend a remand for calculation of benefits based on the ALJ's failure to apply the legal standard in assessing Plaintiff's credibility, in assessing Plaintiff's mental impairments, and in assessing the opinion evidence. See Rosa, 168 at 82-83. Rather, because there are gaps in the administrative record and because the ALJ failed to apply the proper legal standard, remand for further development of the evidence is appropriate.

### IV.    Conclusion

Based on the foregoing, the Court recommends that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:
November 12, 2009
Syracuse, New York

### Orders

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir.1989); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir.1988).

**SO ORDERED**.

_____
Victor E. Bianchini
United States Magistrate Judge


DATED:
November 12, 2009
Syracuse, New York